[Doc. No. 24]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GREGG PANCRAZIO,<br><br>            Plaintiff,<br><br>      v.<br><br>GREYHOUND LINES, INC., et al.,<br><br>            Defendants. | Civil No. 06-3153 (JEI) |

**<u>OPINION</u>**

This matter is before the Court on defendants' Motion for Partial Summary Judgment regarding plaintiff's claim for punitive damages [Doc. No. 24].[1]  The Court has received and considered plaintiff's opposition [Doc. No. 26] and defendants' response [Doc. No. 28], and held oral argument on April 15, 2008.  For the reasons to be discussed defendants' motion is GRANTED.  Pursuant to 28 U.S.C. §636(c), the parties consented to the jurisdiction of this Court to decide defendants' motion.  [Doc. No. 33].

This case arises out of a bus accident that occurred on July 25, 2005, when plaintiff, Gregg Pancrazio, was a passenger on a Greyhound bus driven by Lane.  The accident occurred when the bus was proceeding Northbound on I-95 in the area of mile marker 60.6 in Baltimore, Maryland.  At the time of the accident Lane lost

---

[1] Defendants are Greyhound Lines, Inc. ("Greyhound") and its driver Cotina Lane ("Lane").

control of her bus causing it to spin out of control, strike a tree and eventually roll onto its right side down an embankment. Plaintiff alleges she sustained serious personal injuries in the accident. Although defendants deny they are responsible for punitive damages, they "stipulated to 100% negligence for the happening of the accident." [Doc. No. 19].

In support of his punitive damage claim plaintiff alleges that at the time of his accident Lane exceeded the speed limit and was driving at an excessive rate of speed for the conditions. According to plaintiff, Lane was charged with violation of Maryland Vehicle Law, TA #21.901.1, for reckless driving. See Plaintiff's Statement of Facts ("SOF") in Opposition to Defendants' Motion at ¶5. [Doc. No. 26]. Plaintiff contends the maximum speed limit on I-95 is 55 m.p.h. Id. at ¶6. In addition, plaintiff also alleges defendants negligently inspected their bus and that Lane was driving "with bald tires on slippery, rain-slicked roads at 70 m.p.h. as she approached a curved highway on-ramp." See Plaintiff's Brief ("Pb") at 6. In addition, plaintiff alleges that Lane did not perform a pre-trip inspection of her bus and that she failed to enter on her paperwork three changes of duty status. See SOF at ¶7. Plaintiff argues that a pre-trip inspection "would have revealed that the third right rear axle tire was found to be in violation of Federal Motor Carrier Rules and Regulations. The tires were in violation because they did not have necessary tread

2

depth and some were virtually bald." <u>See</u> SOF at ¶7. Plaintiff also points out that a post-accident report prepared by the Collision Reconstruction Unit of the Maryland Transportation Police Department found that Lane's failure to properly conduct a pre-trip inspection on her vehicle prior to taking it out onto the road showed "a pattern of her gross recklessness & negligence to obey Federal and State laws while operating a commercial motor vehicle with 34 passengers on board." <u>See</u> Defendants' Motion at Exhibit H. Lastly, plaintiff argues that Lane "has a history of multiple traffic violations and accidents" and that she had "an erratic work schedule." <u>See</u> SOF at ¶¶ 9,10.

As noted, defendants do not deny their negligence. However, defendants argue that the available evidence, even when viewed in the light most favorable to plaintiff, is legally insufficient to support an award of punitive damages. The Court agrees with defendants.

<u>DISCUSSION</u>

Summary judgment is appropriate when the materials of record show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the

3

outcome of the suit under the applicable rule of law.  See id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999)(quoting Liberty Lobby, Inc., 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citations omitted).  The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately has the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

This Court's decision is guided by the applicable punitive damage statue, N.J.S.A. 2A:15-5.12.a, which reads:

> Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be

4

> harmed by those acts or omissions.  This burden of proof
> may not be satisfied by proof of any degree of negligence
> including gross negligence.

In determining whether punitive damages may be awarded, the trier of fact is required to consider all relevant evidence, including, but not limited to:

> (1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct;
>
> (2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct;
>
> (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and
>
> (4)  The duration of the conduct or any concealment of it by the defendant.

N.J.S.A. 2A:15-5.12.b.

In order to support his claim for punitive damages plaintiff must prove by clear and convincing evidence that defendants acted with actual malice or willful and wanton disregard of the consequences of their actions.  "'Actual malice' means an intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. 2A:15-5.10.  Plaintiff is not arguing that defendants acted with actual malice.  Instead, plaintiff argues defendants acted wantonly and willfully.  "'Wonton and willful disregard' means a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission."  Id.

As set forth in the punitive damage statute, plaintiff must

5

prove his entitlement to punitive damages by clear and convincing evidence which is a more stringent standard than a preponderance of the evidence.  Clear and convincing evidence produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence that is so clear, direct and weighty and convincing that it enables the factfinder to come to a conclusion without hesitancy of the truth of the precise facts in issue.  See United States v. Askari, 222 Fed. Appx. 115, 119 (3d Cir. 2007)(quoting In re: Jobes, 108 N.J. 394, 408 (1987)).  See also U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985); United States v. Montague, 40 F.3d 1251, 1255 (C.A.D.C. 1994)(clear and convincing evidence "generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain").

When the legislature adopted the Punitive Damage Act, N.J.S.A. 2A:15-5.10, et seq., it codified existing common-law principles. Dong v. Alape, 361 N.J. Super 106, 117 (App. Div. 2003). This includes the principal that a defendant's conduct must be "particularly egregious to support an award of punitive damages." Id, at 116.  Further, a plaintiff must demonstrate a "deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." Berg v. Reaction Motors Div., 37 N.J. 396, 414 (1962).  Mere negligence, even if

6

gross, will not suffice as a basis for punitive damages. DiGiovanni v. Pesseo, 55 N.J. 188, 190 (1970).  "There must be circumstances of aggravation or outrage, such as spite or 'malace,' or a fraudulent or evil motive on the part of defendant, or such a conscious and deliberate disregard of the interests of others that ... [the tortfeasor's] conduct may be called wilful and wanton." Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 50 (1984).

Even viewing the evidence in the light most favorable to plaintiff, the Court finds that as a matter of law plaintiff has not proffered sufficient evidence to support an award of punitive damages.  For purposes of this motion the court must accept as true plaintiff's contention that Lane's speed was as high as 80 m.p.h. shortly before the accident and that her speed was 70 m.p.h. immediately before the accident.  Further, this Court must accept as true the fact that the accident occurred when it was raining and the road was wet.  Nonetheless, although this conduct is demonstrative of negligence, and perhaps gross negligence, speeding on a wet road is not willful and wanton conduct.

Plaintiff argues that although Lane's speeding is not in and of itself sufficient to justify a punitive damage award, the Court must examine the totality of the circumstances.  The linchpin of plaintiff's argument is that the tires on Greyhound's bus were "bald" and that this caused the accident in question.  Plaintiff's

7

argument derives from the post accident report prepared by the Maryland Transportation Authority Police Department. ("MTA"). See Defendants' Exhibits D, E, G, H and I.  Specifically, the Report contains two tables that detail measurements taken of the tread depth on the eight (8) bus tires.   See Exhibit I.  The report cites to 49 C.F.R. §393.75(C) and states that "[t]ires shall have a tread grove (sic) pattern depth of at least 2/32 of an inch when measured in a major tread groove." Id. The same document contains the measurements done by Officers Schapiro and Fife.  Two of the four measurements Schapiro performed on the "Right Rear Tag" tire were 0/32".  One of the four measurements he performed on the "Left Inside Drive" tire was 1/32".  His remaining 29 measurements met or exceeded 2/32".   All four measurements Office Fife did on the "Right Rear Tag" tire were 1/32".  The remaining 28 measurements he performed all exceeded 2/32".  Since 64 measurements were done on the bus tires, and at most a handful of the measurements were below the federal standard cited in the MTA Report, plaintiff's argument that the bus tires were bald appears to be a vast overstatement. More importantly, however, plaintiff has not demonstrated that the condition of the tires caused the July 25, 2005 accident.  This deficiency is important because the punitive damage statute requires plaintiff to prove by clear and convincing evidence that the harm plaintiff suffered was the result of defendants' acts or omissions. See N.J.S.A. 2A:15-5.12.a. (Emphasis supplied).  In the

8

absence of evidence of causation between the condition of the bus tires and plaintiff's accident, plaintiff's "bald tire" argument is irrelevant.  In fact, the only available evidence on this issue demonstrates that the tires did not cause the bus accident.  The same report plaintiff relies upon in support of his punitive damage claim affirmatively concludes that the condition of the tires did not cause the accident.  See Exhibit G ("[t]he vehicle had two (2) violations which were associated with the vehicle's tires.  The 2nd axle leftside and 3rd axle rightside tread depth less than 2/32" in major tread groove areas.  It's is (sic) the opinion of Officer Knipple and myself that the above listed violations were not a causative or contributing factor in the accident").  See also Exhibit H ("[t]he following are [tread depth] violations that are being documented but did not contribute in anyway to this crash").[2]

In support of his punitive damage claim plaintiff also argues that Greyhound was on notice of Lane's prior history of "reckless driving."  See Pb at 11.  Plaintiff contends that in the year 2000 Lane was cited for excessive speeding, in 2002 she was involved in a traffic accident, and she was cited for an illegal turn in August 2004.  This history, even in combination with the other facts

---

[2]The Court rejects plaintiff's argument that the jury should determine if the condition of Greyhound's tires caused plaintiff's accident.  This testimony must be addressed by an expert.  Plaintiff has not proffered any expert evidence to support his argument that Greyhound's tires were "bald" and that this caused his accident.

9

plaintiff cites, is insufficient to justify an award of punitive damages.  Not only is the driving history not extensive, but only one driving violation took place while Lane was driving a commercial vehicle and this occurred in August 2004.  Further, Lane was not cited for speeding after she became a Greyhound employee in April, 2003.  See Pb at 11.  Although Lane's driving history is not ideal, it certainly is not enough to put Greyhound on notice of a "high degree of probability" that Lane would be involved in a bus accident.

Plaintiff also cites to the conclusion in the MTA Report that Lane's conduct "shows a pattern of her gross recklessness and negligence."  See Exhibit H.  However, this statement relates to Lane's failure to conduct a pre-trip inspection of her bus which plaintiff has not alleged caused his accident.  Thus, plaintiff's accident was not the "result" of this oversight.  Furthermore, even if the Court accepts the conclusion that Lane was grossly negligent, it is well settled that a finding of gross negligence cannot support a punitive damage award.  See N.J.S.A. 2A:15-5.12.a; Smith v. Whitaker, 160 N.J. 221, 242 (1999).  As to plaintiff's argument that Lane's schedule was "erratic," the undisputed evidence shows that Lane slept for over eight (8) hours before reporting to drive the bus involved in this accident.  See Pb at 11.

In Dong, supra, the court wrote that something more than the

mere commission of a tort is required to impose punitive damages. "There must be circumstances of aggravation or outrage, which may consist of such a conscious and deliberate disregard of the interests of others that the tortfeasor's conduct may be called wanton and willful. Lacking this element, mere negligence, however gross, is generally held not to be enough." 361 N.J. Super. at 116. Although a jury can certainly find that defendants' conduct amounted to gross negligence, it does not rise to the level of wanton and willful conduct. This Court cannot draw a precise line between gross negligence and willful and wonton conduct because every case is fact specific and must be decided on a case-by-case basis. The Court can say, however, that in this case plaintiff has not presented enough evidence for a jury to decide if punitive damages should be awarded. Plaintiff's argument boils down to the fact that Lane was speeding on a wet road, she had several traffic tickets in the past, and her pre-trip inspection report did not identify a deficiency in two tire treads that did not cause plaintiff's accident. As a matter of law this conduct cannot amount to clear and convincing evidence that defendants engaged in willful and wanton action.

The Court could only identify two reported New Jersey cases in the motor vehicle context where a court held that it was appropriate for the issue of punitive damages to be decided by a jury. In Smith, supra, defendant's oil truck struck a car and

11

killed the plaintiff's decedent who was a passenger.  At the time of the accident defendant's driver could not stop because his brakes were defective.  One month prior to the accident defendant was cited for numerous safety violations but it nonetheless knowingly and deliberately operated its truck in an out-of-service condition for several weeks.  <u>Id</u>. at 229.  Furthermore, defendant knew its brakes were not working properly.  <u>Id</u>. at 229-30.  Defendant also did not instruct or train its drivers regarding proper break safety or maintenance and defendant "simply ignored regulatory record-keeping requirements regarding its vehicle maintenance."  <u>Id</u>. at 230.  Furthermore, defendant's driver was "completely inexperienced and virtually untrained...."  <u>Smith v.. Whitaker</u>, 313 N.J. Super. 165, 191 (App. Div 1998), <u>aff'd</u>, 160 N.J. 221 (1999).  In fact, the driver did not even have a commercial driver's license.  <u>Id</u>. at 198.  The facts in <u>Smith</u> showed that the accident was caused by "total brake failure ..., due to lack of attention to maintenance procedures and poor supervision, ...." <u>Id</u>.  This case is not remotely analogous to <u>Smith</u> where the defendant permitted its driver to knowingly operate a vehicle with defective brakes.  In <u>Smith</u> it was a virtual certainty that an accident would eventually occur if an oil truck was operated without adequate breaks.  No similar egregious conduct exists in this case.

In the second New Jersey case holding that a jury could decide

12

punitive damages in the context of a motor vehicle accident, <u>Dong</u>, <u>supra</u>, the court held that is was error for the trial judge not to submit the issue to the jury for its consideration.  In <u>Dong</u>, the defendant driver knew he was an alcoholic, he was drinking before his accident, he admitted he had a habit of self-medicating to excess with alcohol, he knew he sometimes would black out after drinking, he failed to slow down and drove away after the accident in question, and he drove recklessly immediately prior to the accident.  361 N.J. Super at 120.  Again, the facts in this case are not remotely similar to <u>Dong</u>.  <u>Cf</u>. <u>McMahon v. Chryssikos</u>, 218 N.J. Super 571 (Law Div. 1986)(the mere fact that the defendant driver was intoxicated at the time of his accident is not in and of itself sufficient to impose punitive damages).

Pursuant to the punitive damage statute this Court is bound to consider the likelihood that serious harm would result from defendants' conduct.  N.J.S.A. 2A:15-5.12.b.  In this case there is no evidence that defendants knew or were substantially certain that an accident would occur simply because Lane exceeded the speed limit.  This Court is also bound to analyze defendants' awareness of reckless disregard of the likelihood that serious harm would arise from its conduct.  <u>Id</u>.  As noted, the evidence does not demonstrate that defendants had any such knowledge.  The Court also has to consider defendants' conduct upon learning that their initial conduct would likely cause harm and the duration of

13

defendants' conduct.  <u>Id</u>.  As discussed, the scant evidence that exists to this effect is not legally sufficient to permit the issue of punitive damages to be decided by a jury.  In short, plaintiff has not proffered evidence of defendants' "egregious conduct" or evidence that defendants acted deliberately "with knowledge of a high degree of probability of harm and reckless indifference to the consequences."

<u>CONCLUSION</u>

For all the foregoing reasons, the Court finds that plaintiff has not presented sufficient evidence to support his punitive damage claim and grants defendants' Motion for Partial Summary Judgment.  An appropriate Order will be entered.


<u>s/ Joel Schneider</u>
JOEL SCHNEIDER
United States Magistrate Judge

Dated: April 25, 2008